**DONALD M. GINDY** (SBN# 45228)
Law Offices of Donald M. Gindy
1925 Century Park East, Suite 650
Los Angeles CA, 90067
Telephone: (424) 284-3123
E-Mail: don@gindylaw.com

Attorney for Plaintiff,
VBCONVERSIONS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VBCONVERSIONS LLC, A California Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>THE BAUPOST GROUP, INC., a Massachusetts corporation; J. SANTOS, an individual; DOES 1-10, inclusive;<br><br>Defendants. | Case No:**2:14-cv-08533-CBM (PLA)**<br>*[Assigned to Hon. Consuelo B. Marshall]*<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. COPYRIGHT INFRINGEMENT;**<br>**2. CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**3. VICARIOUS COPYRIGHT INFRINGEMENT;**<br>**4. VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, § 1201(a);**<br>**5. REQUEST FOR INJUNCTIVE RELIEF**<br><br>***Demand for Jury Trial*** |

COMES NOW, the plaintiff, VBConversions, a California limited liability company, which hereby alleges that defendants The Baupost Group, a corporation

and J. Santos, an individual, are liable to it for willful copyright infringement, contributory copyright infringement, vicarious copyright infringement and violation of the Digital Millennium Copyright Act, § 1201(a) in connection with the plaintiff's copyrighted software entitled VB.Net to C# Converter.  This action is based upon a federal question.

### A.     SUMMARY OF THE ACTION.

This action seeks damages and injunctive relief upon defendants' unauthorized access, reproduction and adaptation of plaintiff's copyrighted software entitled "VB.NET to C# Converter."   (C# is pronounced C Sharp).

### B.     JURISDICTION.

1.     This action arises under the Copyright Act of the United States, 17 U.S.C. §101 and §501, et seq and the Digital Millennium Copyright Act, 17 U.S.C. §1201(a).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338(a). Jurisdiction is further founded upon the defendants' affirmation of a provision in a licensing agreement that the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) & §1400(a). Plaintiff further alleges venue is proper as the result of a Forum Selection Clause in a license agreement affirmed by defendants designating the County of Los Angeles, State of California, as the appropriate location for hearing in the event

of a dispute.

## C. PARTIES

3. VBConversions LLC (hereinafter "VBC") is a California limited liability company, whose principal office is located in Santa Monica, California. VBC engages in the licensing of its software products on the World Wide Web of the Internet.

4. Plaintiff is informed and believes and thereon alleges that The Baupost Group ("TBG"), is a Massachusetts corporation, with its principal headquarters located in Boston, MA. Upon information and belief, plaintiff alleges that TBG is one of America's largest hedge funds, investing primarily in securities.

5. Plaintiff is informed and believes and thereon alleges that at all relevant times the co-defendant, J. Santos, was an employee of TBG in the capacity of computer Programmer.

## D. GENERAL ALLEGATIONS

6. Plaintiff has registered its Programs with the Register of Copyright and was given the registration number of TX 6-285-849 for Version 1.0 of the above entitled Program; TX 6-425-720 for Version 2.0. ("the Program") The latter is derivative of the original version of the software. Plaintiff has also registered Version 3.0 and been given registration number TX 0007608975, which is likewise derivative of its predecessors, including all updates and patches. Copies of the registrations are attached hereto and incorporated by reference, collectively, as

**Exhibit "A."**

7. VBC sells its copyrighted Program online at vbconversions.com. VBC subscribes to the Shareware philosophy of offering its Program as a trial version for a limited time to potential purchasers. In this instance, it is offered for 15 days. A party is permitted to try out the Program and learn if it is suitable for their needs. If so, they may apply for a license by paying the standard market fee. Prior to being permitted to use the Trial version, a prospective purchaser must first affirm an End User Licensing Agreement ("EULA"). No registration key is issued to trial users, until they purchase a license by paying the standard market fee to VBC. Otherwise, the trial version of the Program will automatically disable after 15 days. All versions of the Program come bundled with a EULA and the Program cannot be activated until the EULA is affirmed. Attached hereto and incorporated by reference as **Exhibit "B"** is copy of the EULA that pertains to Version 2.0.

8. Unfortunately, despite the best efforts of VBC, it has not been able to stem the tide of unscrupulous people who have gained unauthorized access to its Program and have used the software to quickly convert to this more modern expression of computer language. These intruders have used so-called "cracking sites" which exist in great abundance on the Internet. These sites supply the decryption of registration keys to developer's software and enable fraudulent registration codes (or keys) to be used in order to gain access to the Programs. In self defense, VB has adopted a tracking system which is able to identify the date

and time of the intruder, the external and internal IP of the offending computer, the identity of the user of that computer and other data which is integral to proof of infringement.

9. The tracking system VBC adopted was created by Hitek Software LLC of Goleta, CA. VBC and Hitek are contractually bound to have the latter receive and monitor the data also received by VBC's servers. The data that Hitek receives is as a "third party user registration tracking company," and its presence is noted in the licensing agreement between VBC and its licensees.

10. In business programming, Visual Basic (VB) has one of the largest user bases and is probably the most popular programming language. But many developers look to more recent computer languages in order to enhance what they do and to eliminate flaws found in earlier Programs such as VB. Newer languages used by Programmers include C, C+ and C++. C# has evolved from these earlier attempts at improving VB.

11. C# is intended to be a simple, modern, general-purpose, programming language. The language is intended for use in developing software components suitable for deployment in many different environments. For instance, C# compilers exist for just about every platform imaginable, including Mac, Linux, Windows, Solaris, etc. C# is suitable for writing applications for both hosted and embedded systems, ranging from the very large that use sophisticated operating systems, down to the very small having dedicated functions.

12. Plaintiff is informed and believes that at all times mentioned herein defendants, and each of them, have engaged in and continue to engage in the purchase and/or sale of goods and services within the County of Los Angeles, State of California.

13. The American Registry of Internet Numbers (ARIN) is a non-profit organization that is charged with the task of assigning internet protocol addresses to computers using the Internet. It is one of five organizations around the globe charged with these duties. The geographic area assigned to ARIN is North and South America. ARIN provides information as to the Net Range of Computers, by IP address, owned and/or operated by parties within the above geographical region.

14. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, Named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agents and servants or joint venturers/ partners-in-concert of the other Defendants, and acted within the course and scope of said agency and employment or within the parameter of their agreement.

15. Plaintiff is informed and believes and thereon alleges that at all times

relevant hereto, Defendants and DOES 1-10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiff further alleges that said defendants have a non-delegable duty to prevent or cause such acts and behavior described herein, which duty defendants failed and/or refused to perform. Plaintiff further alleges upon information and belief that each act, transaction or event hereinafter stated was directed, hosted, served and routed through a network operated and maintained by defendant International.

**FIRST CLAIM FOR RELIEF:** *Violation of 17 U.S.C.§106(1)& 501,et.seq., Copyright Infringement against all defendants.*

16. Plaintiff incorporates by reference paragraphs 1 through 15 as if the same were set forth fully herein.

17. On November 8, 2011, at 8:41 a.m., EST, defendant Santos registered and installed the software providing access to the Program, at Version 2.31, on a computer entitled "JSANTOSDT." The Public Internet Protocol address for this computer is 38.97.75.179; the Private IP address is 192.168.41.65. The owner/operator of the computer is defendant TBG.

18. Santos introduced a false registration key into the Trial version on the above date. The key was not issued to Santos, nor to TBG. It was noted to be: P10P22F26GD688835M21GM926. The false key unlocked the software to unlimited use without the knowledge or consent of VBC.

20.     At said time and date, the Santos provided fictitious information in response to requests from VBC.  In response to questions pertaining to the Registration Name, Registration Organization and Registration Email that is to come directly from the user herself, Santos responded "a," "a," and "a, respectively to the three questions.

20.     Also on November 8, 2011, at 8:45 a.m., Santos converted Visual Basic Programming into 60,126 lines of C# by reason of the unlawful use of the Program. At 2:31 p.m., an additional 60,126 lines were converted; and, at 3:55 p.m., an additional 5,745 lines were illegally converted.   The conversions were dedicated to the following vb projects with Assembly titles: "Baupost.BAMS.BusinessDBObjects" and to "ReportEngine."  On November 17, 2011, at 2:29 p.m., another conversion project took place converting VB into 60,138 lines of C# illegally.  The Assembly title appears to be the same as above: "Baupost.BAMS.BusinessD."

21.     On December 16, 2011, at 9:57 a.m., EST, Santos moved the Program to another computer on the same network, i.e., 192.168.41.28.  All of the other data remained the same.  At the above time, Santos converted VB into 2,992 lines of C#. The conversion was dedicated to the following Assembly title: "ImportEngine."

22.     On December 23, 2011, at 1:56 and 1:59 p.m., Santos converted first another 60,419 lines to C#, then two instances of 3,007 lines.  Finally, at 2:25 p.m., Santos converted Visual Basic Programming into 118,070 lines of C# by reason of

the illegal use of the Program. The conversions were dedicated to: "Baupost.BAMS.BusinessDBObjects;""ImportEngine;"and, "Baupost.BAMS.UIWindowsForms."

23. The total of all lines illegally converted amounts to 373,630. To place the number of lines in perspective, the lines are roughly equal to 3.5% in textual material or 13,000 pages. If the average book is 200 pages in length, it would be about 65 books placed one atop another. In other words, a small but well assembled library. Copies of Proofs reflecting the infringements mentioned above are included as **Exhibit "C"**.

24. As a result of the unlawful activities set forth above, defendants have violated *registered version 2.0* for those conversions effectively occurring November 8 & 17, 2011 and December 16 & 23, 2011.

25. Plaintiff alleges that the full amount of Actual Damages, including profit attributable to the infringement, is unknown to plaintiff at this time, but according to proof at time of trial. Plaintiff does allege that Statutory Damages amount to $150,000.00. The acts of defendants, and each of them, involve the use of a fraudulent key in order to bypass plaintiff's legitimate codes issued to genuine purchasers. Accordingly, then, the acts complained of were willful and deliberate and qualify for the maximum allowed by 17 U.S.C. § 504 (c)(2).

**SECOND CLAIM FOR RELIEF:** *Vicarious Copyright Infringement*

26. Plaintiff incorporates by reference paragraphs 1 through 25, inclusive,

as if the same were set forth fully herein.

27.  Plaintiff is informed and believes and thereon alleges that at all times relevant to the actions complained of herein the employer, TBG, had the right and ability to oversee, govern, control and direct its employees actions, including, but not limited to, halting any adverse conduct in which its employee is engaged. Yet, despite this ability, defendants failed and continued to fail to enforce rules of conduct upon its employees, which has led to the number of lines being converted to C#, wrongfully.

28.  Plaintiff further alleges that as a proximate result of defendants' conduct, defendants have profited in an amount and in a manner that would not have taken place, but for the purloining of plaintiff's copyrighted software by its employees. Accordingly, defendants' have gained a financial benefit to which they are not entitled.

29.  Under the circumstances outlined above, defendants,' and each of them, are liable to plaintiff for Statutory Damages as willful vicarious copyright infringers in the amount of $150,000.00. Defendants' are also liable for Actual Damages in an amount unknown at this time, but according to proof at time of trial.

**THIRD CLAIM FOR RELIEF:** *Contributory Copyright Infringement*

30.  Plaintiff incorporates by reference paragraphs 1 through 29, inclusive, as if the same were set forth fully herein.

31.  By virtue of its position as employer, defendant TBG knew or had

reason to know that its employees had gained unauthorized access to plaintiff's copyrighted Programs and were using same for the benefit of the company.

32. Furthermore, plaintiff is informed and believes that Defendants aided and abetted the actions of its employees and materially contributed therein by supplying the data and equipment necessary to encourage, urge and persuade, and induce the usage of plaintiff's intellectual property, in particular, by supplying computers, a router and a virtual private network through which each and every instance of infringement alleged herein has traveled and been directed to plaintiff's software. Contribution is also detected by turning a "blind eye" to the actions of Santos and permitting her to continue the wrongful actions against plaintiff.

33. Defendants, and each of them, are jointly and severally liable to Plaintiff in Actual Damages of a sum unknown at this time, but for all profits attributable to the infringements, according to proof at time of trial. In the alternative, defendants are jointly and severally liable for Statutory Damages of $150,000.00, as and for the willful and intentional infringement and unauthorized access, copying and usage of plaintiff's copyrighted Programs.

**FOURTH CLAIM FOR RELIEF:** *Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1201).*

34. Plaintiff repeats and re-alleges paragraphs 1 through 33, as if the same were set forth fully herein.

35. At all times mentioned herein, plaintiff had in force a confidential 25

digit alphanumeric code designed to control access to his copyrighted software. It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement (EULA) and pays the standard market fee that unlimited access to the licensed product is permitted. When adherence is satisfied plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate code enabling access to the copyrighted Programs.

36.    The code is intended as a technological measure for the purpose of protecting his proprietary Program. To gain access requires knowledge of the 25 digits issued by plaintiff. It is intended to exclude those who seek to circumvent the code and gain unauthorized access.

37.    The true number of acts of circumvention is unknown at this time, but plaintiff is informed and believes and thereon alleges that at least 9 occasions recited above occurred.

38.    As a consequence of defendants' unlawful and unauthorized circumvention of plaintiff's measures, plaintiff has sustained damages as previously set forth herein.

39.    The use of the circumvention device to gain access is an intentional and knowledgeable act by the defendants. It is therefore willful and subjects defendants jointly and severally liable for the maximum allowed for Statutory Damages per act of circumvention or $2,500.00 on 9 occasions for a total of $22,500.00. Alternatively, Plaintiff is entitled to Actual Damages for profits

attributable to the acts of circumvention per 17 U.S.C. § 1203(c)(2), according to proof at time of trial.

**WHEREFORE**, plaintiff prays that the Court issue the following:

A. Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefitting from plaintiff's copyrighted application software identified above without the express written approval of plaintiff or his delegate;

B. Defendants be ordered to identify, preserve, set aside and retain any and all source code used by them in the in the infringement alleged above pursuant to Federal Rule of Civil Procedure 34, which includes, but is not limited to:(i) all electronically stored information which contains any portion of plaintiff's copyrighted Program; (ii) all writings as defined in Federal Rule of Evidence 1001, which refer to or mention in any manner plaintiff's Program, except to those items based on privilege.

C. Pay plaintiff all damages sustained by him as the result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at plaintiff's expense. In particular, Plaintiff demands compensation of at least $150,000.00 as and for Statutory Damages under the Copyright Act or Actual Damages for profits attributable to the infringement, both direct and indirect, according to law.

D. Plaintiff demands at least $22,500.00 for violation of the applicable

sections of the Digital Millennium Copyright Act, §1201(a), et seq., over and above those damages recited under the Copyright Act of 1976;

E. Trial by jury.

F. All costs of litigation, costs of suit, reasonable attorney fees and interest at legal rates.

G. Such other and further relief as the Court deems just under the circumstances.

Dated: February 9, 2015

**LAW OFFICES OF DONALD M. GINDY**

By: *[signature]*
Donald M. Gindy
Attorney for Plaintiff
VBConversions LLC